IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CHRISTIAN M. WHICHARD,

                    Plaintiff,

          v.

WILLINGBORO TOWNSHIP, et al.,

                    Defendants.

HONORABLE JEROME B. SIMANDLE


Civil Action
No. 13-3606 (JBS/JS)


**OPINION**


APPEARANCES:

Charles H. Nugent, Jr., Esq.
Law Office of Charles H. Nugent, Jr.
South Crossing Office Condominiums
530 Lippincott Drive
Building E
Marlton, NJ 08053
     Attorney for Plaintiff Christian M. Whichard

Richard L. Goldstein, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN, & GOGGINS, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
     Attorney for Defendant Bennie Langford


**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

     This matter comes before the Court upon Defendant Bennie

Langford's motion for summary judgment.[1] [Docket Item 39.] In

---

[1] Also pending before the Court is a motion for summary judgment
by Defendants James McKendrick, Christopher Vetter, and
Willingboro Township. [Docket Item 40.] Plaintiff, however, has

this action, Plaintiff Christian M. Whichard alleges that

Officer Langford, a member of the Willingboro Township Police

Department and SWAT Team, shot him in the back without

justification during a search of Plaintiff's residence on

September 27, 2011. Plaintiff asserts claims against Officer

Langford for negligence, assault and battery, as well as for

violating his civil rights under the United States and New

Jersey constitutions. The principal issues presented are whether

Plaintiff's claims are barred by the applicable statute of

limitations and whether Officer Langford is entitled to

qualified immunity as to Plaintiff's federal claims or good

faith immunity as to Plaintiff's state law claims.

For the reasons that follow, the Court will grant in part

and deny in part Officer Langford's motion for summary judgment.

## II.  BACKGROUND

### A.  Facts

It is undisputed that in September, 2011, Officer Quinones

of the Willingboro Township Police Department ("Willingboro PD")

worked with a confidential informant to conduct two controlled

purchases of illegal drugs from Plaintiff. (Def. SMF [Docket

---

indicated in briefing that he intends to file a stipulation of
dismissal as to these defendants. Accordingly, the Court will
enter a separate order dismissing this motion as moot and
dismissing Plaintiff's claims against Defendants James
McKendrick, Christopher Vetter, and Willingboro Township.

Item 39-4] ¶ 2.) Thereafter, the Willingboro PD secured a search warrant for Plaintiff's residence at 58 Buckeye Lane, Willingboro, New Jersey. (Id. ¶¶ 6-7.) The Willingboro PD planned and executed the search warrant. (Id. ¶ 8.) Officer Langford was a police officer with the Willingboro PD and a member of the SWAT team since 2002. (Id. ¶ 9.) On September 27, 2011 at 8:00 a.m., the SWAT team executed the search warrant at Plaintiff's residence. (Id. ¶ 14.) Having taken their tactical formation outside the residence, the officers knocked on the door and announced themselves as police, but no one answered. (Id. ¶¶ 15-17.)

The officers used a battering ram to force open the front door. (Id. ¶ 18.) Officer Langford was the first person on the SWAT team to enter the house. (Id. ¶ 12.) Officer Langford was wearing all black with a bulletproof vest. (Id. ¶ 20.) He was carrying an AR-15 rifle, a semi-automatic weapon which requires the trigger to be pulled for each discharge. (Id. ¶¶ 20-21.) Upon entering and observing Plaintiff at the end of a hallway, Officer Langford stated, "Police search warrant, show me your hands. Police search warrant, show me your hands." (Id. ¶¶ 22-24.) Plaintiff did not comply and partially entered the adjacent bedroom.[2] (Id. ¶ 25.) Officer Langford approached the entrance of

---

[2] Plaintiff's girlfriend, Jessica Evans, testified that upon hearing the police, Plaintiff opened the bedroom door, but did

the bedroom and found Plaintiff on the floor, on his stomach, with his arms spread out. (Id. ¶ 27.)

There is a significant factual dispute as to what happened next. According to Officer Langford, when he approached the bedroom doorway, he observed a pit bull running at him which he believed was going to attack him. (Langford Dep. [Docket Items 39-9 & 39-10] at 64:10-65:3.) Officer Langford fired two shots in quick succession from his AR-15 rifle. (Langford Dep. at 65:5-10; Vetter Dep. [Docket Items 39-11 & 39-12] at 76:1-7.) The pit bull was shot and killed. (Def. SMF ¶ 34.) Plaintiff was also shot. (Id. ¶ 35.) Officer Langford testified that he did not intend to shoot Plaintiff and that he believes Plaintiff was hit with a ricochet from the rounds fired at the dog. (Langford Dep. at 67:4-69:9.)

Plaintiff's explanation of what transpired after the Willingboro PD entered his home on September 27, 2011 is quite different and depends on the testimony of his girlfriend, Jennifer Evans, who was in the bedroom with Plaintiff at the time. According to Evans, after hearing banging on the front door, Plaintiff opened the bedroom door and the dog walked

---

not fully enter the hallway. Instead, Evans explained that Plaintiff immediately dropped to the floor upon opening the bedroom door, leaving some portion of his body inside the bedroom and some portion in the hallway. (Evans Dep. [Docket Items 39-17, 39-18 & 39-19] at 31:9-32:25.)

toward the hallway. (Evans Dep. at 30:16-31:7.) Plaintiff immediately dropped to the floor. (Id. at 31:9-10.) The dog was either standing or lying next to Plaintiff in the threshold of the bedroom. (Id. at 35:17-36:2.) Evans testified that the dog did not bark or growl at any point. (Id. at 36:7-9.) Evans observed two officers in the bedroom doorway. (Id. 34:1-3.) She recalls the officers pointing their guns and ordering them to put their hands up. (Id. at 36:12-13.) She heard a bullet go into the dog, then saw the gun being turned toward Plaintiff and being shot at him. (Id. at 36:14-17; 133:12-17.) Evans believes that two shots were fired by the same officer. (Id. at 37:18-20.) According to Evans, neither Plaintiff nor the dog made any movements toward the offers before they were shot. (Id. at 40:8-13.)

There is no dispute that the Willingboro PD found marijuana and ecstasy in Plaintiff's residence. (Def. SMF ¶ 38.) Plaintiff ultimately pleaded guilty to possession of a controlled substance. (Id. ¶ 39.)

**B. Procedural history**

Plaintiff filed a twelve-count complaint on June 11, 2013 against Willingboro Township, Willingboro Township Police Department, Cinnaminson Township Police Department, Officer G. Quinones, and Sergeant McKendrick. [Docket Item 1.] Plaintiff also named as defendants numerous fictitious parties, including

John Does Willingboro Township Police Officers 1-20, John Does Cinnaminson Township Police Officers 1-20, John Does 1-25, and ABC Municipalities 1-5. Plaintiff filed an Amended Complaint on October 24, 2013 adding as defendants Officer Langford, Sergeant Christopher Vetter, and Lieutenant Timothy Young.[3] [Docket Item 13.] The Amended Complaint asserts claims for negligence, assault and battery, false arrest or false imprisonment, failure to supervise, negligent hiring, and various civil rights violations under the United States and New Jersey constitutions. On July 21, 2014, Plaintiff's claims against Defendants Cinnaminson Township, Cinnaminson Township Police Department, John Does Cinnaminson Township Police Officers 1-20, and Lieutenant Timothy Young were dismissed by stipulation of the parties. [Docket Item 29.] Thereafter, in accordance with the applicable scheduling order, Officer Langford filed the instant motion for summary judgment [Docket Item 39.] Defendants McKendrick, Vetter, and Willingboro Township also filed a motion for summary judgment, which Plaintiff does not oppose. [Docket Item 40.] Plaintiff filed opposition to Officer Langford's motion [Docket Item 44] and Langford filed a reply [Docket Item 46].

---

[3] Plaintiff's Amended Complaint did not reassert claims against the Willingboro Township Police Department, Cinnaminson Township Police Department, and G. Quinones. Accordingly, these defendants were terminated from the case.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

Officer Langford argues that Plaintiff's claims fail in their entirety because they were filed outside the two-year statute of limitations period. Alternatively, Langford contends that he is entitled to qualified immunity which is fatal to Plaintiff's federal civil rights claims, as well as "good faith" immunity which is fatal to Plaintiff's state law claims. Moreover, Langford argues that 42 U.S.C. § 1982 has no relevance to this case; that Plaintiff has abandoned his false arrest or false imprisonment claims; that Plaintiff's failure to supervise

7

claims are irrelevant to Langford because he had no supervisory duties; that Plaintiff has offered no evidence regarding a conspiracy to violate Plaintiff's rights; that Plaintiff's due process claim fails because Langford's conduct does not "shock the conscience;" and that Plaintiff cannot seek punitive damages based on his federal or state claims. Plaintiff concedes a great deal in his response and agrees to dismiss his claims premised on 42 U.S.C. § 1982, false arrest or false imprisonment, failure to supervise, and conspiracy. Accordingly, these claims will be dismissed.

The Court's analysis will focus on whether Plaintiff's claims are time-barred, whether Officer Langford is entitled to immunity, whether the evidence in the record supports a due process claim, and whether Plaintiff may seek punitive damages. The Court will address each in turn.

**A.   Statute of limitations**

As a threshold matter, the Court rejects Defendant's argument that Plaintiff's claims are barred by the statute of limitations. The incident at issue occurred on September 27, 2011, and Plaintiff filed his initial complaint within two years, on June 11, 2013. Plaintiff did not file his Amended Complaint naming Officer Langford until October 24, 2013. There is no dispute that Plaintiff's claims are subject to a two-year statute of limitations. Plaintiff, however, may rely on the New

8

Jersey fictitious party rule by which his Amended Complaint
relates back to the filing of his initial complaint on June 11,
2013, and is therefore deemed timely.

Under Rule 15(c)(1), Fed. R. Civ. P., "[a]n amendment to a
pleading relates back to the date of the original pleading when
. . . the law that provides the applicable statute of
limitations allows relation back." Fed. R. Civ. P. 15(c)(1). The
Court thus looks to New Jersey law which provides the relevant
statute of limitations. See DeRienzo v. Harvard Indus., Inc.,
357 F.3d 348, 353 (3d Cir. 2004). New Jersey Rule 4:26-4
provides in pertinent part:

> [I]f the defendant's true name is unknown to the plaintiff,
> process may issue against the defendant under a fictitious
> name, stating it to be fictitious and adding an appropriate
> description sufficient for identification. Plaintiff shall on
> motion, prior to judgment, amend the complaint to state
> defendant's true name, such motion to be accompanied by an
> affidavit stating the manner in which that information was
> obtained.

N.J.R. 4:26-4. Courts in this District have recognized that
there are three principal requirements to invoke the fictitious
party rule: 1) the complaint must contain a description
sufficient to identify the defendant; 2) the plaintiff must have
exercised due diligence to ascertain the defendant's true name
before and after filing the complaint; and 3) application of the
fictitious party must not prejudice the defendant. See Ortiz ex
rel. Rivera v. City of Camden, Civ. 11-2300 (NLH), 2013 WL

9

1811895, at *3 (D.N.J. Apr. 29, 2013); <u>Constantino v. City of</u>
<u>Atl. City</u>, Civ. 13-6667 (RBK), 2014 WL 6474076, at *4-5 (D.N.J.
Nov. 19, 2014).

In the present action, Plaintiff has satisfied all three
requirements. Beginning with the description of the fictitious
parties in Plaintiff's initial complaint, the Court finds that
the Complaint filed on June 11, 2013 contains a series of
descriptions which are sufficient to identify Officer Langford,
including the following:

> Defendants, John Doe Willingboro Township Police Department
> Officers 1-20 are the fictitious names for unknown
> Willingboro Township Police Officers who were, at all times
> relevant hereto, agents, servants and employees of the
> Township of Willingboro and the Willingboro Township Police
> Department, that were involved in the September 27, 2011,
> execution of search warrant and arrests at the plaintiff's
> residence at 58 Buckeye Lane, Township of Willingboro, County
> of Willingboro and State of New Jersey.

(Compl. [Docket Item 1] ¶ 11.)[4] Officer Langford does not argue
that the descriptions of "John Doe Willingboro Police Officers
1-20" in the Complaint are inadequate and the Court finds no

---

[4] Additionally, Plaintiff's initial Complaint recounts in detail
the conduct of the police during the search of his home on
September 27, 2011 during which he was "shot in the back by one
or more of the officers that were executing the search warrant."
(Compl. ¶ 20.) The Complaint clearly alleges that it was Officer
G. Quinones, Sergeant McKendrick, John Doe Willingboro Township
Police Officer 1-20, and/or John Doe Cinnaminson Township Police
Officers 1-20 "who shot the plaintiff causing him to sustain
serious personal injuries." (<u>Id.</u> ¶ 21.)

reason to conclude that it was insufficient to identify Officer Langford, among others.

As for the due diligence requirement, the Court recognizes that the "New Jersey Supreme Court has not provided a standard definition of diligence," DeRienzo v. Harvard Indus., Inc., 357 F.3d 348, 354 (3d Cir. 2004), and courts consider due diligence on a case-by-case basis. See Constantino v. City of Atl. City, Civ. 13-6667 (RBK), 2014 WL 6474076, at *5 (D.N.J. Nov. 19, 2014); Ortiz ex rel. Rivera v. City of Camden, Civ. 11-2300 (NLH), 2013 WL 1811895, at *5 (D.N.J. Apr. 29, 2013); Monaco v. City of Camden, Civ. 04-2406 (JBS), 2008 WL 408423, at *6 (D.N.J. Feb. 13, 2008). Here, Plaintiff's Counsel, Charles H. Nugent, Jr., has submitted a certification stating that he did not know the identity of the officers involved in the search at the time of filing and "all efforts to identify him had been met with resistance." (Nugent Cert. [Docket Item 44-14] ¶ 3.) Counsel explains that on November 15, 2011, shortly after being retained in this matter, he spoke with Detective Malesich of the Burlington County Prosecutor's Office ("BCPO") regarding the incident at issue. (Id. ¶ 8.) Malesich would not identify Officer Langford. (Id.) On December 8, 2011, Counsel spoke with Assistant Prosecutor Tad Drummond from the BCPO. (Id. ¶ 9.) Drummond mentioned that there was a Cinnaminson Police Officer involved in the execution of the search warrant, but he did not

11

know the identity of the officer who shot Plaintiff. (Id.)
Counsel represents that he had "several more phone discussions"
with Drummond and requested discovery regarding the shooting.
(Id. ¶ 10.) However, Drummond declined Counsel's discovery
requests because the matter was subject to an ongoing criminal
investigation by the BCPO and would be presented to a grand
jury. (Id.) When Counsel requested discovery in the related
state court criminal action against Plaintiff from both the
prosecutor and Plaintiff's defense counsel, Counsel believes the
discovery provided intentionally omitted information from which
he could identify Officer Langford. (Id. ¶ 12.) Despite
possessing only general information about the incident, Counsel
states that he decided to file the Complaint on June 11, 2013.
(Id. ¶¶ 14-15.) Plaintiff served Willingboro Township with the
Complaint on July 30, 2013. (Id. ¶ 16.)

    The BCPO was served with a subpoena on August 14, 2013
which requested their entire criminal file regarding the
incident. (Id. ¶ 18.) Although the subpoena provided a return
date of August 28, 2013, the BCPO did not provide Counsel with
the file until October 9, 2013. (Id. ¶ 21.) Soon thereafter, on
October 9, 2013, Magistrate Judge Schneider conducted an initial
conference with the parties and on October 15, 2013 granted
Plaintiff leave to file an Amended Complaint naming new parties
by October 23, 2013. [Docket Item 22.] Counsel contends that

12

there was no objection from defense counsel at this time.
(Nugent Cert. ¶ 21.) Counsel then filed the Amended Complaint on
October 24, 2013. (Id. ¶ 23.)

Officer Langford attaches to his reply brief an email from
defense counsel addressed to Plaintiff's counsel dated August
29, 2013. (Def. Reply, Ex. A [Docket Item 46-3].) The letter
states, "it is my understanding you will be filing an Amended
Complaint wherein you will name Officer Bennie Langford as
direct Defendant while also dismissing the Willingboro Police
Department as a separate Defendant in this litigation . . . ."
(Id.) Accordingly, Officer Langford contends that Plaintiff's
counsel knew his identity on August 29, 2013, at the latest, and
had nearly one full month before the expiration of the statute
of limitations to file an amended complaint.

Viewing the facts in the light most favorable to Plaintiff,
as it must, the Court cannot conclude based on the current
record that Plaintiff's counsel did not exercise due diligence
in filing an Amended Complaint on October 24, 2013 nearly four
weeks after the expiration of the statute of limitations. Nor
can the Court conclude based on the August 29, 2013 letter that
Plaintiff knew at that time that Officer Langford was the
officer who allegedly shot Plaintiff on September 27, 2011.
Plaintiff's counsel has recounted in great detail his efforts to
obtain information regarding the identities of the officers

13

involved in the incident, including the alleged shooter, and he
represents that he "only learned of the officers['] identities
after receiving the BCPO criminal investigative file on October
9, 2013." (Pl. Opp. [Docket Item 44] at 11.) On that same day,
October 9, 2013, Judge Schneider granted Plaintiff permission to
file an amended complaint by October 23, 2013. Plaintiff's
filing of the Amended Complaint one day beyond the deadline does
not undermine his otherwise diligent efforts to identify Officer
Langford and name him in an amended complaint in accordance with
the timeframe prescribed by Judge Schneider's directives. In so
finding, the Court heeds the New Jersey Supreme Court's caution
not to "disserve the [fictitious party] rule's broad remedial
purposes" by construing the rule as requiring more than "good
faith" and "diligence." Farrell v. Votator Div. of Chemetron
Corp., 62 N.J. 111, 120 (1973).

Finally, turning to the potential prejudice to Officer
Langford, which is considered a "crucial factor" in the
analysis, the Court finds none. Scott v. New Jersey State
Police, Civ. 14-4553 (WJM), 2014 WL 5286572, at *4 (D.N.J. Oct.
15, 2014) (quoting Claypotch v. Heller, Inc., 360 N.J. Super.
472, 480 (App. Div. 2003)). "[E]ven though a defendant suffers
some prejudice merely by the fact that it is exposed to
potential liability for a lawsuit after the statute of
limitations has run, absent evidence that the lapse of time has

14

resulted in a loss of evidence, impairment of ability to defend, or advantage to plaintiffs, justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim." Claypotch, 360 N.J. Super. at 482 (internal quotations and alterations omitted). In the present action, Officer Langford has not identified any prejudice as the result of Plaintiff's filing of the Amended Complaint one month after the expiration of the limitations period. There is no indication that the brief delay in naming Officer Langford caused the loss of evidence or impaired his ability to defend against Plaintiff's claims. Moreover, Plaintiff's clear identification of the officers involved in the September 27, 2011 search, coupled with the fact that Willingboro Township and the Willingboro PD were named in the initial complaint, provides ample reason to believe that Officer Langford received due notice of this litigation.[5] Therefore, having found that Plaintiff satisfied all requirements to invoke the fictitious party rule under N.J.R. 4:26-4, the Court rejects Officer Langford's argument that Plaintiff's claims are barred by the applicable statute of limitations, and finds that Officer

---

[5] In so observing, the Court does not rely on the fact that defense counsel for Willingboro Township and the Willingboro PD did not object at the scheduling conference to Plaintiff's filing of the Amended Complaint by the October 23, 2013 deadline. The Court recognizes that Officer Langford is represented by separate counsel in this litigation.

Langford was duly named as a fictitious party within the limitations period. Accordingly, New Jersey law recognizes the Amended Complaint against Langford as timely, and the Amended Complaint relates back to the original date of filing under Rule 15(c)(1)(C), Fed. R. Civ. P.

**B.   Qualified immunity and good faith immunity**

Plaintiff claims that Officer Langford violated his rights under the United States and New Jersey constitutions by using excessive force in the course of the September 27, 2011 search of Plaintiff's home and his subsequent arrest.[6] Officer Langford argues that Plaintiff's excessive force claim fails as a matter of law because he is entitled to qualified immunity.[7]

---

[6] Plaintiff brings such claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

[7] The Court notes that the foregoing analysis is equally applicable to Plaintiff's excessive force claim under the New Jersey constitution because courts have analyzed claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. in the same manner as claims under § 1983. See Baklayan v. Ortiz, Civ. 11-03943 (CCC), 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012) ("The NJCRA closely tracks the federal civil rights statutes, and courts interpret the statute in terms nearly identical to its federal counterpart.") (quotation omitted); Kramer v. City of Jersey City, No. A-3373-12T4, 2014 WL 1257116, at *4 (N.J. Super. Ct. App. Div. Mar. 28, 2014) ("Our courts recognize the

The Fourth Amendment's objective reasonableness standard controls where a police officer allegedly uses excessive force during an arrest. See Graham v. Connor, 490 U.S. 386, 397 (1989). To establish a claim for excessive force as an unreasonable seizure, a plaintiff must show that: (a) a seizure occurred; and (b) that seizure was unreasonable. See Rivas v. City of Passaic, 365 F.3d 188, 198 (3d Cir. 2004) (citing Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)). The objective reasonableness standard in this context "requir[es] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Saucier v. Katz, 533 U.S. 194, 205 (2001) (citation omitted). Ultimately, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

---

defense of qualified immunity under the New Jersey Civil Rights Act, and apply federal case law to qualified immunity claims."). Moreover, it does not appear that the New Jersey Supreme Court has suggested that state law provides greater protection in the excessive force context than federal law and there is "no reason to conclude that . . . the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution." Norcross v. Town of Hammonton, Civ. 04-2536 (RBK), 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). In Saucier, the Supreme Court mandated a two-step analysis for determining the applicability of qualified immunity: 1) whether, under the standard applicable at that stage of the proceedings, plaintiff has alleged or shown a violation of a constitutional right, 533 U.S. at 201; and 2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. The Supreme Court no longer requires strict adherence to this two-step sequence and courts may begin the analysis with either inquiry. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Taylor, 135 S. Ct. at 2044 (quoting Reichle, 132 S. Ct. at 2093). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quotation omitted). The Supreme Court does "not require a case directly on point, but

existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 2083.

Viewed in the light most favorable to Plaintiff, the facts in the record are sufficient to support a finding that Officer Langford's shooting of Plaintiff constituted an unreasonable seizure in violation of his Fourth Amendment rights.[8] "It is unreasonable for an officer to use deadly force against a suspect unless the officer has good reason to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011) (quotation omitted). Certainly, courts are to remain mindful that "law enforcement officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" and "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." Id. (quotations and alterations omitted). In the present action, however, Ms. Evans testified that Officer Langford first fired at the dog, then redirected his weapon, aiming it directly at Plaintiff and shooting him in the back. Ms. Evans explained that

---

[8] Indeed, Officer Langford concedes that Ms. Evans' testimony, if accepted as true, "would create a fact issue as to Plaintiff's various causes of action." (Def. Reply [Docket Item 46] at 5.)

Plaintiff never made any movement toward the offers before he
was shot. To the contrary, Evans contends that after hearing
banging on the front door, Plaintiff opened the bedroom door and
immediately dropped to the floor. As the two officers
approached, Plaintiff was stomach-down on the floor with his
arms outstretched. There is nothing in Ms. Evans' eyewitness
account upon which the Court could conclude that a reasonable
officer on the scene would have reasonably believed that
Plaintiff posed a significant threat of death or serious injury
to the officers. The facts of this case, as alleged by Plaintiff
and supported by plausible testimony, thus fall well-short of
those where courts have found officers' use of deadly force
reasonable in the totality of circumstances. See Plumhoff v.
Rickard, 134 S. Ct. 2012, 2022 (2014); Curley v. Klem, 499 F.3d
199, 216 (3d Cir. 2007). Therefore, the Court finds that, based
on Evans' testimony, there is sufficient evidence in the record
to conclude that a constitutional violation occurred.

     Officer Langford does not argue that the constitutional
right at issue was not clearly established. As such, the Court
need not belabor the point. There is evidence in the record from
which a reasonable jury could conclude that Officer Langford
intentionally fired his weapon into Plaintiff's back as he lay
prone on the floor. Accepting this as true, Officer Langford is
certainly not entitled to qualified immunity. See Lamont v. New

Jersey, 637 F.3d 177, 185 (3d Cir. 2011) ("It has long been the law that an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others.").

Officer Langford's sole argument to support his entitlement to qualified immunity is that the Court should reject Ms. Evans' testimony because it is not credible.[9] It is clear that the question of whether a constitutional violation has occurred is an "essentially factual question" properly presented to the jury. Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007) (explaining, however, that "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a

---

[9] In the case Officer Langford cites in support, Grove v. City of York, Penn., 342 F. Supp. 2d 291 (M.D. Pa. 2004), the court denied both parties' motions for summary judgment because the reasonableness of defendants' probable cause determination "depend[ed] upon a credibility determination" which in the Third Circuit is "for the jury." Id. at 309. Accordingly, Grove is consistent with well-established precedent that credibility is to be determined by the jury. Moreover, Ms. Evans testified that she saw one of the two officers who entered Plaintiff's residence on September 27, 2011 shoot Plaintiff in the back. (Evans Dep. at 38:19-39:1.) Evans testified consistently during her deposition regarding her observation of the alleged shooting. (Id. at 135:3-136:23; 161:1-162:6.) Contrary to Officer Langford's assertion, Evans' depiction of the layout of the bedroom and hallway where the shooting allegedly occurred hardly undermines her unequivocal testimony that she observed the shooting. As Plaintiff notes, the drawing is obviously not to scale and in no way suggests that it was impossible for Evans to have observed what she said she did. Where there is a plausible foundation for such eyewitness testimony, it is not for this Court to make credibility determinations in connection with a qualified immunity motion.

question of law" for the court); Monteiro v. City of Elizabeth,
436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity
is a question of law determined by the Court, when qualified
immunity depends on disputed issues of fact, those issues must
be determined by the jury."); Palmer v. Nassan, 454 F. App'x
123, 125-26 (3d Cir. 2011) ("A claim of excessive force under §
1983 requires 'the jury . . . to determine whether [the officer]
used force that was objectively reasonable under the
circumstances and facts confronting him at that time, without
regard to his underlying motivation") (quoting Mosley v. Wilson,
102 F.3d 85, 95 (3d Cir. 1996)). This is consistent with the
well-established principle that jurors weigh the evidence in the
record and determine the credibility of witnesses. Frank C.
Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177,
184 (3d Cir. 2015) ("We must refrain from weighing the evidence,
determining the credibility of witnesses, or substituting our
own version of the facts for that of the jury.") (citation and
alterations omitted). Therefore, it is inappropriate for the
Court to determine Ms. Evans' credibility. The Court must view
her testimony, as well as the other facts in the record, in the
light most favorable to Plaintiff. Having done so, the Court

concludes, as explained above, that Officer Langford is not entitled to qualified immunity at this stage.[10]

Officer Langford also argues that he is entitled to good faith immunity under N.J.S.A. 59:3-3 in regard to any state based claims asserted in Counts One and Two of the Amended Complaint. Plaintiff responds by arguing that his assault and battery claim should proceed because Officer Langford is not entitled to good faith immunity and the New Jersey Torts Claims Act does not provide immunity for willful misconduct.

N.J.S.A. § 59:3-3 provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. "Good faith immunity under section 3-3 has two alternate components." Alston v. City of Camden, 168 N.J. 170, 186 (2001) (citation omitted). "A public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" Id. (citation omitted). "Immunity attaches if the employee can show either objective or subjective good faith." Id. However, N.J.S.A. §

---

[10] Because the question of qualified immunity is ultimately a question for the Court, this conclusion may change based on the facts found by the jury at trial. Curley v. Klem, 499 F.3d 199, 214 (3d Cir. 2007) ("The jury was not bound at trial, and the District Court was not bound post-trial, by our earlier statements involving a hypothetical set of facts favoring Curley, since the facts and inferences actually found by the jury were clearly different than those which we were required to posit in Curley I when considering the summary judgment order.").

59:3-14a provides that "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. § 59:3-14a. "[W]illful misconduct requires 'much more' than mere negligence" and "fall[s] somewhere on the continuum between simple negligence and the intentional infliction of harm." Alston, 168 N.J. at 185 (citation omitted). "[I]n order to recover for injuries allegedly produced by willful and wanton misconduct, it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." Id. (quoting McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)). The New Jersey Supreme Court has recognized that "good faith" and "willful misconduct" are "not necessarily two sides of the same coin" and "the distinction between the two is a narrow one." Alston, 168 N.J. at 187 (quotation omitted).

In the present action, there is a genuine dispute of material fact regarding what transpired after the police entered Plaintiff's home on September 27, 2011. Both parties recognize that Ms. Evans' account is diametrically opposed to that offered

24

by the officers involved. The facts in the record, viewed most favorably to Plaintiff, could support a reasonable jury finding that Officer Langford is not entitled to good faith immunity and that he engaged in willful misconduct for purposes of N.J.S.A. § 59:3-14a by shooting Plaintiff in the back without provocation and without any reasonable concern for his safety as Plaintiff lay face-down on the floor. See Apata v. Howard, Civ. 05-3204, 2008 WL 4372917, at *15 (D.N.J. Sept. 23, 2008) (noting that a reasonable jury could conclude that officer engaged in willful misconduct where plaintiff testified that officer initiated confrontation and unwanted physical contact); Williams v. Twp. of W. Deptford, Civ. 05-1805 (RBK), 2008 WL 1809134, at *12 (D.N.J. Apr. 22, 2008) (finding allegations that officer picked up plaintiff and threw her to the ground sufficient to find that officers acted intentionally and recklessly and thus not entitled to good faith immunity). Therefore, the Court will deny Officer Langford's motion for summary judgment to the extent he argues that he is entitled to good faith immunity under New Jersey law.

## C.   Substantive due process[11]

Officer Langford contends that Plaintiff's substantive due process claim under the Fourteenth Amendment must fail because

---

[11] Although not raised by the parties, the Court queries whether Plaintiff may maintain a substantive due process claim under the

Plaintiff is unable to establish that Officer Langford's conduct shocks the conscience. Officer Langford's argument, however, is again based on the faulty premise that the Court must disregard Ms. Evans' testimony and accept his characterization of the shooting as merely accidental. Viewing the record as the Court must at this stage, Plaintiff's substantive due process claim may proceed.

"The core of the concept of due process is protection against arbitrary action . . . and that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 425 (3d Cir. 2006) (quotation and citation omitted). A plaintiff may only establish a substantive due process violation when the alleged misconduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. (quotation omitted). Accordingly, "the threshold question is whether the behavior of the governmental officer is so

_____

Fourteenth Amendment based on excessive force. See Graham v. Connor, 490 U.S. 386, 388 (1989) ("[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."); Hurt v. City of Atl. City, Civ. 08-3053 (JBS/JS), 2010 WL 703193, at *4 (D.N.J. Feb. 24, 2010) (dismissing substantive due process claim). Nevertheless, the Court addresses Plaintiff's substantive due process claim as briefed by the parties.

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. (quotation omitted). Negligent conduct is never enough to shock the conscience, while intentional conduct is likely to do so. Id. at 426. The inquiry is fact-sensitive and depends on the circumstances of each case. Id. The Third Circuit has noted that courts "must determine whether the officer is confronted with a hyperpressurized environment such as a high-speed chase, or, in the alternative, has the luxury of proceeding in a deliberate fashion." Estate of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005) (quotations omitted). "In the latter case, deliberate indifference may be sufficient to shock the conscience; in the former, it is usually necessary to show that the officer deliberately harmed the victim." Id. (internal quotations and citations omitted).

Regardless of which standard applies to the instant case, the Court finds sufficient evidence in the record to support a substantive due process violation. Even if Officer Langford made a split-second decision to twice discharge his weapon, viewing the evidence most favorably to Plaintiff, there is sufficient evidence from which a reasonable jury could determine that Officer Langford intentionally shot Plaintiff during the September 27 search. Accepting Ms. Evans' account as true, Officer Langford intentionally shot the dog and aimed his weapon

27

at Plaintiff as he lay face-down on the floor. Under those facts, neither Plaintiff, nor the dog, made any movements toward the officers, and neither posed any danger to Officer Langford. Even if Officer Langford made the split-second decision to shoot a dog which he perceived as menacing, Ms. Evans testified that Officer Langford redirected his weapon at Plaintiff after any threat posed by the dog was neutralized. On the other hand, assuming that the situation was not highly pressurized and Officer Langford had the ability to act in a deliberate fashion, a reasonable jury could conclude that Officer Langford acted with deliberate indifference to risk of inflicting serious injury or death. At the very least, there is a substantial factual dispute regarding the sequence of events that led to Plaintiff's shooting, which precludes entry of summary judgment in Officer Langford's favor. See Irick v. City of Philadelphia, Civ. 07-0013, 2008 WL 2120171, at *7 (E.D. Pa. May 20, 2008) (allowing substantive due process claim to proceed after recognizing "a fundamental factual dispute as to whether [police officer] fired directly at [plaintiff], even though [plaintiff] himself had not threatened the officers in any way and his dog remained by his side, or fired at a charging dog released by [plaintiff]"). Therefore, the Court will deny Officer Langford's motion for summary judgment to the extent it seeks dismissal of

Plaintiff's substantive due process claim under the Fourteenth Amendment.

### D.   Punitive damages

The Court likewise rejects Officer Langford's argument that Plaintiff is unable, as a matter of law, to recover punitive damages for his state and federal claims.

Under § 1983, while a defendant who violates a federal constitutional right may not necessarily be subjected to punitive damages, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages. See Smith v. Wade, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983).

Similarly, with respect to Plaintiff's state law claims, under New Jersey's Punitive Damages Act, N.J.S.A. § 2A:15-5.12, "Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual

malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence." N.J.S.A. § 2A:15-5.12(a).[12]

As discussed above, based on Ms. Evans' testimony that Officer Langford deliberately shot Plaintiff in the back as he lay prone on the floor posing no threat to the officers on the scene, a reasonable jury could conclude that Officer Langford acted with reckless indifference or willful disregard to Plaintiff's rights. Therefore, the Court will permit Plaintiff's punitive damages claim to proceed at this time.

## V.  CONCLUSION

In light of the foregoing, the Court will grant Officer Langford's motion for summary judgment as to Plaintiff's claims premised on 42 U.S.C. § 1982, false arrest or false imprisonment, failure to supervise, and conspiracy because Plaintiff has agreed to dismiss such claims. The Court will deny Officer Langford's motion for summary judgment to the extent it argues that Plaintiff's claims are barred by the statute of

---

[12] N.J.S.A. § 2A:15-5.12(a) only applies to Plaintiff's tort claims and claims for violations of state constitutional rights. See Robinson v. Jordan, Civ. 08-5863, 2012 WL 2397446, at *1 n.4 (D.N.J. June 25, 2012). It has no bearing on Plaintiff's § 1983 claims for violations of federal constitutional rights.

limitations and that Officer Langford is entitled to immunity under federal and state law. Moreover, the Court rejects Officer Langford's argument that Plaintiff's substantive due process and punitive damages claims fail as a matter of law. An accompanying Order will be entered.


__August 26, 2015__                     __s/ Jerome B. Simandle__
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge